UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                     :

EMILIE MORSE,                             :

                Plaintiff,                   :

  -against-                         :    CV-09-5075 (KAM-ALC)

JETBLUE AIRWAYS CORPORATION,   :

                Defendant.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Dated:  New York, New York
         June 5, 2012

Edward Cerasia II
Caitlin A. Senff
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1745 Broadway, 22nd Floor
New York, New York 10019
(212) 492-2500

Attorneys for Defendant
JetBlue Airways Corporation

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. ARGUMENT ..................................................................................................................... 1

      A.    JETBLUE ACCOMMODATED MORSE FOR EIGHTEEN MONTHS .............. 1

      B.    FLYING WAS AN ESSENTIAL FUNCTION OF MORSE'S POSITION .......... 4

      C.    MORSE WAS NOT MEDICALLY CLEARED TO RETURN TO WORK, AND DID NOT APPLY FOR AND WAS NOT THE MOST QUALIFIED FOR REASSIGNMENT .................................................................. 7

      D.    MORSE'S NYSHRL AND NYCHRL CLAIMS WERE NOT TOLLED DURING PENDENCY OF HER EEOC FILING ................................................... 8

      E.    *PARKER* IS DISTINGUISHABLE FROM THE CIRCUMSTANCES SURROUNDING MORSE'S TERMINATION ....................................................... 9

      F.    MORSE FAILED TO SUFFICIENTLY EXPLAIN INCONSISTENCIES SO AS TO AVOID JUDICIAL ESTOPPEL ......................................................... 10

III. CONCLUSION ............................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Canales-Jacobs v. N.Y. State Office of Court Admin.*,
  640 F. Supp. 2d 482 (S.D.N.Y. 2009) ...................................................................................... 6

*Cleveland v. Policy Mgmt. Sys. Corp.*,
  526 U.S. 795 (1999) ............................................................................................................... 10

*D'Eredita v. ITT Industries*,
  2009 WL 1161618 (W.D.N.Y. Apr. 29, 2009) ..................................................................... 4, 5

*Esposito v. Deutsche Bank AG*,
  2008 U.S. Dist. LEXIS 101460 (S.D.N.Y. Dec. 15, 2008) ...................................................... 9

*Gilani v. NASD*,
  1997 U.S. Dist. LEXIS 12287 (S.D.N.Y. Aug. 18, 1997) ....................................................... 9

*Huber v. Wal-Mart Stores, Inc.*,
  486 F.3d 480 (8th Cir. 2007) ................................................................................................... 8

*Micari v. TWA*,
  43 F. Supp. 2d 275 (E.D.N.Y. 1999) .................................................................................. 3, 4

*Osorio v. Source Enters.*,
  2006 U.S. Dist. LEXIS 63032 (S.D.N.Y. Sept. 1, 2006) ......................................................... 9

*Parker v. Columbia Pictures Indus.*,
  204 F.3d 326 (2d Cir. 2000) .................................................................................................... 9

*Ragusa v. UPS*,
  2009 WL 637100 (S.D.N.Y. Mar. 3, 2009) ............................................................................. 6

## I. PRELIMINARY STATEMENT

Morse's arguments are fundamentally flawed in that they ignore the undisputed fact that JetBlue provided her with a reasonable accommodation for a period of eighteen consecutive months *and* that, at the end of that time period, she never was medically cleared to return to work by July 2006, or thereafter.[1] Yet, even if Morse was capable of returning to work, it is undisputed that she was unable to fly or successfully complete the FAA-mandated annual training to be qualified to fly – which JetBlue reasonably determined to be an essential function of her Inflight Supervisor position (and a requirement for *all* Inflight Supervisors). In the end, it is telling that Morse cannot point to a single case where an employer provided an 18-month accommodation, let alone one in which the employee survived summary judgment after being accommodated for 18 consecutive months. That is because there is no such case, and there is no factual or legal basis on which Morse can make this the first such case.

In short, the undisputed evidentiary record makes clear that, in light of JetBlue's 18-month accommodation of Morse, she has no legally supportable claim and cannot avoid summary judgment by simply ignoring the undisputed favorable treatment she received. Therefore, JetBlue respectfully requests that the Court grant its motion for summary judgment.

## II. ARGUMENT

### A. JETBLUE ACCOMMODATED MORSE FOR EIGHTEEN MONTHS

In her opposition papers, Morse fails to acknowledge JetBlue's eighteen-month accommodation (from January 2005 through July 12, 2006), let alone the legal significance of it.

---

[1] The abbreviated and capitalized terms used in this reply memorandum are defined in "Defendant's Memorandum Of Law In Support Of Its Motion For Summary Judgment." ("Def.'s Mem.") "Plaintiffs' Memorandum Of Law In Opposition To Defendant JetBlue's Motion For Summary Judgment" will be cited herein as "Pl.'s Br."

Rather, in mere cursory fashion, she dismisses her own admission that JetBlue accommodated her by relieving her from flying for 6 months, (Pl.'s Br. at 25), maintaining that her former supervisor, Valerie Jenkins, then-Manager of Inflight, did not consider the removal of her flying duties for 6-months to be an "accommodation," (*id*.). But, engaging in mere semantics does not undermine the fact that, between January 2005 and July 7, 2005, JetBlue relieved Morse from flying solely because of her medical condition. (Def.'s 56.1, ¶ 14.) That was an "accommodation" in every legal sense of the word, and Morse's own admissions and arguments confirm that point. For instance, Morse argues from the outset that JetBlue unlawfully discriminated against her by "refusing to consider and denying her requests that, *in accommodation of her disability*, she be allowed to return to her job, *modified, if necessary, to eliminate flying* or to transfer her to a non-flying position." (Pl.'s Br. at 1) (emphasis added). In claiming to have sought an accommodation in the form of removing the flying requirement to her IFSUP position, Morse was asking that she be treated in the same fashion she was treated between January 2005 and July 7, 2005, before she took her leave. (Def.'s 56.1, ¶ 34 (Morse Dep. at 184-85).) Obviously, eliminating flying cannot in one instance be considered a mere favor, but in the next breath be the basis on which her failure to accommodate claim stands.

With this in mind, the undisputed record shows that, from January to July 7, 2005, JetBlue accommodated Morse for six months by permitting her to work as an Inflight Supervisor without flying. Thereafter, Morse was out on leave for a period of a little over twelve months.[2] Toward the end of the expiration of her 12-month leave, Morse interacted with various members

---

[2] While Morse claims she was forced on disability leave in July 2005, the record is clear that, following the delay in Morse's surgery on July 7, 2005, her then-new surgeon, Dr. Frank Cammisa, advised her to stop working as of July 19, 2005. (Def.'s 56.1, ¶ 25.)

2

of JetBlue, including, Bilak (People Department),[3] Cozzie (Inflight), Robilard (Inflight), and Gomez (Benefits), concerning her leave and employment status.

Morse claims to have been willing to transfer to a different position at JetBlue in July 2006, but she ignores an insurmountable obstacle to her contention, namely: she was never medically cleared to return to work. Critical to her position is the fact that, under JetBlue's policy, crewmembers like Morse on medical leave must provide JetBlue with appropriate documentation showing their physical ability to return to work before they will be permitted to return to work, apply for rehire or internally transfer. (Cerasia Decl., Ex. B - Morse Dep. Ex. 7 (JB 0223) & Morse Dep. Ex. 12 (JB 0131); Def.'s 56.1, ¶ 36.) It is undisputed that Morse did not provide JetBlue with any such medical release documentation, and thus, she could not apply for or transfer to another position – whether vacant or not. (Def.'s 56.1, ¶ 30.) Consequently, the fact that she was not medically cleared to return to work dooms her claims.

While Morse also argues that JetBlue failed to engage in the interactive process before terminating her in July 2006, (Pl.'s Br. at 13-15), nothing is further from the truth, (Def.'s 56.1, ¶¶ 30-38). Rather, Morse ended that process when she did not provide JetBlue with medical clearance to return to work. The ability to perform the essential functions of a position is a requirement to reinstatement both under JetBlue's policy, (Def.'s 56.1 ¶ 28), and the law, *Micari*

---

[3] Morse incorrectly states that Bilak's Declaration contradicted his deposition testimony. (Pl.'s Br. at 19.) Rather, at his deposition, Bilak testified that he was not aware of any hardship that JetBlue suffered *during the six month* period that Morse was not qualified to fly as a flight attendant. (Bilak Dep. at 59-60 (attached to Declaration of Caitlin A. Senff, Esq. ("Senff Decl.") as Ex. A).) In his Declaration, Bilak stated the impact JetBlue would have suffered as a result of Morse being unable to fly as of July 12, 2006. (Def.'s 56.1, ¶ 45.) That was consistent with Bilak's deposition testimony, when he testified that he understood a hardship existed during that time period in that the crewmembers were not being supported by their Inflight Supervisor. (Bilak Dep. at 59-60.) Thus, Bilak's deposition testimony both related to a different time frame than his Declaration and was consistent.

*v. TWA*, 43 F. Supp. 2d 275, 281-82 (E.D.N.Y.) (granting summary judgment where there was no accommodation that would have allowed the plaintiff to perform essential functions of airplane mechanic position), *aff'd*, 205 F.3d 1323 (2d Cir. 1999). Given the absence of medical clearance to return to work, JetBlue informed Morse of her termination and, in doing so, encouraged her to re-apply for a job once she was medically able to return – something Morse never did and which plainly shows that JetBlue did not harbor discriminatory animus toward her. (Def.'s 56.1, ¶ 36.) Under these circumstances, the only alternative would have been to allow Morse to remain on an indefinite leave, which is not legally required. *See* Def.'s Mem. at 18-19 (collecting cases).

In the end, Morse cannot point to a single case where an employer provided an 18-month accommodation, let alone one in which the employee survived summary judgment after being accommodated for 18 consecutive months and the employee was not medically cleared to return to work.[4] Standing alone, JetBlue's 18-month accommodation warrants summary judgment.

**B.     FLYING WAS AN ESSENTIAL FUNCTION OF MORSE'S POSITION**

Relying upon her own subjective opinion, Morse erroneously argues that flying is not an essential function of the Inflight Supervisor position. (Pl.'s Br. at 15-17.) Yet, in setting forth the factors used to consider whether a job function is essential, Morse overlooks both her own testimony that flying was a 20-hour requirement as of the Spring of 2005, (Def.'s 56.1, ¶ 7), and, most significantly, the critical factor that is clearly entitled to the most consideration, namely: the employer's judgment, *D'Eredita v. ITT Indus.*, 2009 WL 1161618, at *8 (W.D.N.Y. Apr. 29, 2009), *aff'd*, 370 Fed. Appx. 139 (2d Cir. 2010) (Summary Order, holding: "A [district] court

---

[4]     The cases cited by Morse with respect to 52-week administrative termination policies do not undermine JetBlue's arguments. (*See* Pl.'s Br. at 29-30.) Those cases do not involve instances of accommodation much beyond one year, let alone eighteen consecutive months and the lack of medical clearance to return to work.

4

must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position.") (citation omitted). JetBlue reasonably determined that flying was an essential function of Morse's Inflight Supervisor position. (Def.'s Mem. at 15; Def.'s 56.1, ¶¶ 4, 5, 6, 8.) Morse even admits that, as of the Spring 2005, her job required 20 hours per month of flying. (Def.'s 56.1, ¶ 7.) The flying requirement was two-fold: (1) JetBlue required Inflight Supervisors in Morse's position to fly as part of their duties to oversee flight attendants whom they supervised and (2) JetBlue required *all* Inflight Supervisors to maintain current qualifications as a flight attendant, which, under FAA regulations, required Morse to be current with FAA-mandated training. (Def.'s 56.1, ¶¶ 9-10.) Morse does not dispute that Federal requirement. (Pl.'s 56.1, ¶¶ 9-10.) And, it is not for Morse (or the Court) to question JetBlue's legitimate decisions surrounding its determination of the job's essential functions. *D'Eredita*, 2009 WL 1161618, at *8. In the end, it is undisputed that Morse was unable to fly from January 2005 through her termination (and through the present).

Equally flawed is Morse's failure to focus on *her* actual job duties, as opposed to those of other Inflight Supervisors. Morse's discussion surrounding the other Inflight Supervisor positions is irrelevant in determining the essential function of *her position*. Beginning in March or April of 2005, Inflight Supervisors were required to fly 20 hours per month. (Def.'s 56.1, ¶ 7.) Moreover, *all* Inflight Supervisor had to qualify as a flight attendant, which in turn required the Supervisor to complete FAA-mandated recurrent training each year. Therefore, flying was in fact an essential function of Morse's position for these two reasons alone.

Morse's contention that crewmember training was not an essential function of her Supervisor position, (*see* Pl.'s Br. at 18), is similarly flawed. As stated above, an essential function of *all* Inflight Supervisor positions was to be qualified, under FAA regulations, as a

5

flight attendant. To do so, as Morse concedes, the Supervisors needed to complete FAA-mandated training. (Def.'s 56.1, ¶¶ 8-10.) Morse points to John Lewis as an example of an Inflight Supervisor who was not up to date on training to support her argument that such qualification was not essential, (Pl.'s Br. at 18), but her arguments misrepresent the facts. First, Lewis worked as an Inflight Supervisor while dequalified for *only one month*. (Def.'s 56.1, ¶ 56.) Moreover, JetBlue informed Lewis that, in order to maintain his Inflight Supervisor position, he needed to become qualified as a flight attendant – *something he did the following month*. (*Id.*, ¶ 57.) This shows JetBlue determined that completion of FAA-mandated training was an essential function of *all* Inflight Supervisor positions, not just Morse's job.

Tellingly, Morse does not dispute that JetBlue had no obligation to eliminate an essential job function of her job as an accommodation, *Canales-Jacobs v. N.Y. State Office of Court Admin.*, 640 F. Supp. 2d 482, 500 (S.D.N.Y. 2009) ("[S]ummary judgment may be granted where the proposed accommodation would eliminate an essential function of the job."), and that if an employer exceeds its obligations under the law and eliminates an essential function – like JetBlue did for Morse in relieving her from flying for over six months – it need not continue to do so in perpetuity, *Ragusa v. UPS*, 2009 WL 637100, at *4-5 (S.D.N.Y. Mar. 3, 2009). Thus, when the Court gives appropriate deference to JetBlue's legitimate determination that flying, and being qualified to fly, was essential to Morse's job, it follows that there is absolutely no basis to impose liability here.

The Court also should disregard Morse's efforts to minimize the flying requirement. Morse's reliance on the purported number of flights taken by other Inflight Supervisors is simply misplaced and short on facts. (Pl.'s Br. at 16-17.) To begin, those flight records reflect only instances in which an Inflight Supervisor flew *as a flight attendant*, and not when she or he flew

6

*as an Inflight Supervisor.* (Lewis Dep. at 85-86 (attached to Senff Decl. as Ex. B).) Thus, Morse's tabulations of flying time merely demonstrate *some* instances in which Inflight Supervisors may be called upon to fly, but not the entirety of flying occasions. (*Id.*) Further, the *number* of such flights taken by Inflight Supervisors does not diminish or in any way refute JetBlue's legitimate requirement that Inflight Supervisors fly *and* maintain FAA-mandated qualifications as flight attendants by successfully completing the FAA-mandated annual, recurrent training, which Morse admittedly was unable to complete. (Def.'s 56.1, ¶¶ 8-10.)

C. **MORSE WAS NOT MEDICALLY CLEARED TO RETURN TO WORK, AND DID NOT APPLY FOR AND WAS NOT THE MOST QUALIFIED FOR REASSIGNMENT**

Morse's claim that JetBlue could have reassigned her to a non-flying position misses the point. (Pl.'s Br. at 21-25.) To begin, she completely disregards the dispositive fact that she was unable to return to *any* job because she was not medically cleared to do so. (Def.'s 56.1, ¶ 30.) Morse ignores this fact when addressing two positions – Customer Service Supervisor and Inflight Scheduler – to which she would have been willing to transfer. (Compl., ¶ 32; Def.'s 56.1, ¶ 46.) With respect to the Inflight Scheduler position, Morse takes great liberties in characterizing Jonathan Toppin's deposition testimony. (Pl.'s Br. at 21-22.) Toppin testified that Morse had "some degree" of the requisite crew scheduling experience and that such experience would "trigger the recruiter to ask a little bit more detailed questions to her as to what degree." (Toppin Dep. at 48, 53 (attached to Senff Decl. as Ex. C).) Morse never applied for the position and thus no such inquiry was undertaken. (Def.'s 56.1, ¶ 46.) Moreover, Toppin testified that Crespo and Capps, who were awarded the available Inflight Scheduler positions, had more crew scheduling experience than Morse, (Toppin Dep. at 54), and thus were more

7

qualified.⁵  *See Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 483-84 (8th Cir. 2007) (no violation of ADA for employer to award position to superior applicant); Def.'s Mem. at 20-21. Indeed, Morse admittedly had no such experience and would require training for that job. (Def.'s 56.1, ¶ 51.)  This fact is equally dire to Morse's contention that JetBlue's policy requires only that she met the new job's qualifications.  (Pl.'s Br. at 22-23.)  In discussing the reasonable accommodation process, Eileen Maguire, the head of People Compliance, testified that the job would need to be equal (or lower) and the minimum qualifications would need to be met without any kinds of adjustments.  (Maguire Dep. at 46 (attached to Senff Decl. as Ex. D).)⁶  This is simply not the case here, as there is no evidence that the Scheduler job was equal to or lower in rank than the Inflight Supervisor job.

In a last ditch effort, Morse claims that various positions – many of which required flying – were available in March, April and May of 2006.  (Pl.'s Br. at 24-25.)  Putting aside that Morse was not the most qualified candidate for these positions, she was never able to return to work.

### D.  MORSE'S NYSHRL AND NYCHRL CLAIMS WERE NOT TOLLED DURING PENDENCY OF HER EEOC FILING

Morse argues that her EEOC filing tolled the statute of limitations on her NYSHRL and NYCHRL claims.  (Pl.'s Br. at 9.)⁷  While some courts have held that the statute of limitations

---

⁵  Due to an administrative error, JetBlue accidently omitted the sentence "Capps met the minimum qualifications for this position" from ¶ 49 of Def.'s 56.1 and failed to remove the sentence "Crespo met the minimum qualifications for this position" from ¶ 50 of Def.'s 56.1.  (*See* Senff Decl., ¶ 6.)  JetBlue respectfully requests that this error be corrected to conform to the facts.

⁶  Toppin's testimony relied upon by Morse, (Pl.'s Br. at 23), surrounded his understanding of the Compliance department, and thus was not based on first-hand knowledge.

⁷  Morse does not address JetBlue's argument that her pre-January 20, 2006 ADA claim is time-barred, (Def.'s Mem. at 9), and thus she must be deemed to have conceded that point.

8

under the NYSHRL and NYCRL are tolled in such instances, numerous courts have held that such claims are time-barred, despite a related EEOC filing. *E.g.*, *Osorio v. Source Enters.*, 2006 U.S. Dist. LEXIS 63032, at *8 (S.D.N.Y. Sept. 1, 2006) (concluding that NYSHRL and NYCHRL claims were time-barred because "an EEOC charge does not toll the time for state law claims arising from the same events"); *Gilani v. NASD*, 1997 U.S. Dist. LEXIS 12287, at *31 n.5 (S.D.N.Y. Aug. 18, 1997). Indeed, in *Esposito v. Deutsche Bank AG*, 2008 U.S. Dist. LEXIS 101460, at *14-15 (S.D.N.Y. Dec. 15, 2008), cited by Morse, the court noted that while the Second Circuit has "yet to definitively opine on the issue of whether the filing of a charge with the EEOC serves to automatically toll the statute of limitations on claims asserted under NYSHRL and NYCRL. . . . [o]ne summary order issued by the Second Circuit indicates it may not." As such, JetBlue respectfully submits that this Court should conclude that all of Morse's NYSHRL and NYCHRL claims are time-barred and should be dismissed. (*See* Def.'s Mem. at 9). Indeed, there is no compelling public policy or other reason warranting a different result.

E. *PARKER* IS DISTINGUISHABLE FROM THE CIRCUMSTANCES SURROUNDING MORSE'S TERMINATION

Morse relies heavily on *Parker v. Columbia Pictures Industries*, 204 F.3d 326 (2d Cir. 2000), in arguing that JetBlue discriminatorily discharged her. (Pl.'s Br. at 26-27.) Her reliance on *Parker* is misplaced. In *Parker*, at the time of Columbia Picture's discharge of the plaintiff, he was capable of returning to work on a limited basis and, more importantly, he had not been provided with eighteen consecutive months of an accommodation. In contrast, Morse could not perform the essential function of flying for the Inflight Supervisor position, she could not undergo the FAA-mandated recurrent training to be a qualified flight attendant, and she was not medically cleared to work *at all* as of July 12, 2006. Moreover, JetBlue already accommodated Morse for 18 months by July 12, 2006, thereby further refuting any claim that JetBlue terminated

9

her because of her disability. (*See* Def.'s Mem. at 23.)

### F. MORSE FAILED TO SUFFICIENTLY EXPLAIN INCONSISTENCIES SO AS TO AVOID JUDICIAL ESTOPPEL

In opposing JetBlue's judicial estoppel argument, Morse claims that while she certified to the Social Security Administration and Unum in seeking disability benefits that she was totally unable to work, she informed JetBlue that she could work with an accommodation. (Pl.'s Br. at 10.) That argument, however, does sufficiently clear up her glaring inconsistent positions, but rather confirms and restates the contradiction itself. Under *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999), Morse must actually explain the inconsistencies; she cannot just "create a genuine issue of fact. . . simply by contradicting [] her own previous sworn statement[s] . . . without explaining the contradiction or attempting to resolve the disparity." Yet, Morse has simply contradicted herself and, as such, cannot survive summary judgment. *See* Def.'s Mem. at 7-8.

### III. CONCLUSION

For the foregoing reasons, and the reasons set forth in JetBlue's moving papers, the Court should grant JetBlue's motion for summary judgment dismissing the Complaint.

Dated: New York, New York
June 5, 2012

                                          Respectfully submitted,

                                          OGLETREE, DEAKINS, NASH,
                                          SMOAK & STEWART, P.C.

                                          By  s/ Edward Cerasia II
                                             Edward Cerasia II
                                             Caitlin A. Senff
                                          1745 Broadway, 22nd Floor
                                          New York, New York 10019
                                          (212) 492-2500

                                          Attorneys for Defendant
                                           *JetBlue Airways Corporation*